UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Vera Chapman and Krystal Howard, § <br> § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> A.S.U.I. Healthcare of Texas, Inc., *et al.,* § <br> § <br> *Defendants*. § | Civil Action H-11-3025 |

**Memorandum Opinion & Order**

Pending before the court is plaintiffs Vera Chapman and Krystal Howard's ("Chapman and Howard") motion for summary judgment against defendants A.S.U.I. Healthcare and Development Center, Kim McLemore, and Diann Simien (collectively, "ASUI"). Dkt. 20. Upon consideration of the motion, response, reply, relevant portions of the record, and applicable law, plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

**I. Background**

On a motion for summary judgment, the court views the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008). ASUI is a Home and Community-Based Services ("HCS") program provider that contracts with the Texas Department of Aging and Disability Services ("DADS") to provide case management, nursing care, residential assistance, day habilitation, and other services to disabled individuals. Dkt. 20, Ex. C at 1. ASUI is included on a list of healthcare providers kept by the Mental Health and Mental Retardation Authority of Harris County ("MHMRA") from which cognitively disabled clients, or their guardians,

may choose a provider. Dkt. 20, Ex. E at 26–27. ASUI assists these clients in choosing a group residence in which to live. *Id.* at 30–31. Additionally, ASUI staffs and operates a "main office" and a Dayhabilitation Center. *Id.* at 15–16. Clients attend the Dayhabilitation Center Monday through Friday, from approximately 9:00 am to 3:00 pm. *Id.* at 41–42.

ASUI interviews and hires "direct care specialists" to be with the clients at the group residences. Dkt. 20, Ex. E at 42–44. These workers are labeled "independent contractors" by ASUI and are classified as non-employees for tax purposes. Dkt. 20, Ex. E at 15–16, 43–44; Dkt.23, Exs. A–B at 1. No previous experience is required to be a direct care specialist, and direct care specialists must purchase their own uniforms. Dkt. 20, Ex. A at 1–2, Ex. B at 1, Ex. E at 44. While at the residences, direct care specialists wash, cook, clean, interact with clients, and assist clients in working on their "training goals." Dkt. 20, Ex. E at 41. Direct care specialists typically work every other day at the residences, from approximately 3:00 pm until 9:00 am, when clients return to dayhab. Dkt. 20 Ex. A at 1–2, Ex. B at 1–2, Ex. E at 41–42. Their hours can fluctuate, however, because of field trips, doctors appointments, and other irregular circumstances. Dkt. 20, Ex. E at 58–59. Direct care specialists are not paid from 10:00 pm to 6:00 am while the clients are asleep. *Id.* at 61–62.

Chapman and Howard were hired as direct care specialists by ASUI. Dkt. 20, Ex. A at 1, Ex. B at 1. Krystal Howard ("Howard") worked for ASUI from the fall of 2005 until December 16, 2010. Dkt. 20, Ex. A at 1–3. Vera Chapman ("Chapman") intermittently worked as a direct care specialist from the fall of 2008 until December 2010. Dkt. 20, Ex. E at 1–2. Simien told Chapman and Howard that they were to work one day on and one day off, but they sometimes worked additional shifts at Simien's request. Dkt. 20, Ex. A at 2, Ex. B at 2. Thus, in a two-week period, they worked a minimum of three shifts one week and four the next, working approximately 57

hours the first week and 76 hours the next. Dkt. 20, Ex. A at 3, Ex. B at 3. However, Chapman and Howard were instructed to sign out while the clients were sleeping, and were not paid for those hours. Dkt. 20, Ex. A at 2, Ex. B at 2. They were also paid the same hourly rate regardless of hours worked. *Id.*

Chapman and Howard filed this action on August 18, 2011, alleging violations of 29 U.S.C. §§ 206(a) and 207(a)(1) of the Fair Labor Standards Act of 1938 ("FLSA") and asserting liability for unpaid wages and overtime compensation under 29 U.S.C. §216(b). Dkt. 1 at 6–7. On June 15, 2012, Chapman and Howard filed the instant motion for summary judgment. Dkt. 20. ASUI filed a response to the motion for summary judgment on July 5, 2012, arguing there is a fact issue regarding Chapman and Howard's employee status. Dkt. 23 at 1. Chapman and Howard filed a reply challenging the law cited by ASUI, and reiterating their original arguments. Dkt. 25. The motion is ripe for adjudication.

## II. LEGAL STANDARD

A timely motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

When the movant bears the burden of proof on an issue, he must establish beyond peradventure *all* of the essential elements of the claims or defenses to warrant judgment in his favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Moreover, when the movant does not bear the burden of proof on a claim or affirmative defense, he bears the initial burden of production to show an absence of evidence to support the non-movant's claim. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). If the movant makes this showing, the ultimate burden to avoid summary judgment shifts to the non-movant who "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *Davis-Lynch, Inc., v. Moreno*, 667 F.3d 539, 550 (5th 2012). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are no substitute for specific facts showing a genuine dispute for trial. *TIG Ins. Co.*, 276 F.3d at 759.

### III. ANALYSIS

On June 15, 2012, Chapman and Howard filed the instant motion for summary judgment, asserting that ASUI failed to pay them minimum wage and overtime compensation as required by 29 U.S.C. §§ 206 and 207(a)(1), and is liable for damages under 29 U.S.C. § 216(b). Dkt. 20 at 3. Chapman and Howard assert that (1) they are employees of ASUI as a matter of law, and (2) ASUI violated the FLSA as a matter of law by failing to compensate them for all hours worked and overtime. Dkt. 20 at 11, 12. Chapman and Howard also argue that, although ASUI raised the companionship services exemption in its motion to dismiss, there is no factual basis to support ASUI's exemption claim. *Id.* at 15. ASUI responded to the motion for summary judgment, asserting that there was a genuine dispute of material fact as to whether plaintiffs were employees or independent contractors. Dkt. 23 at 1. In ASUI's response, it did not argue or present evidence that Chapman and Howard were subject to the companionship services exemption. *See id.*

The court first considers whether plaintiffs have established the prima facie elements of their FLSA claim as a matter of law. Then the court considers whether defendants have demonstrated a genuine dispute of material fact regarding any affirmative defenses. Finally, the court considers whether plaintiffs have established damages as a matter of law and whether attorneys' fees should be granted at this stage.

A.   **Prima Facie Violation of the FLSA**

The FLSA requires all employers to pay employees a minimum wage for hours worked. 29 U.S.C. § 206(a). Additionally, employers must pay employees who work more than forty hours a week one and one-half times their regular pay rate for each hour of overtime. *Id.* § 207(a)(1). Employee status is based on the economic realities of the relationship, and, therefore, the subjective beliefs of the alleged employees or employers are irrelevant to a worker's status. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir. 1987).

   1.   *Employee Status*

To determine if a worker is an employee or an independent contractor for FLSA purposes, the court focuses on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). To aid in this determination, the court considers five factors as part of the "economic realities" approach: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id.* at 343. "These factors are merely aids to the analysis and no single factor is determinative." *Thibault v. Bellsouth Telecomm., Inc.*, 612 F.3d 843, 846 (5th Cir. 2010). While

5

this is a highly factual analysis, the court can find workers to be employees as a matter of law when the evidence demonstrates that each factor weighs in favor of employee status. *Hopkins*, 545 F.3d at 346.

Chapman and Howard assert that record evidence demonstrates, as a matter of law, that each of these factors supports a finding that they were employees of ASUI and not independent contractors. Dkt. 20 at 9–11; Dkt. 25 at 4–9. In its response, ASUI argues that the "critical factor" in the determination under Texas law is whether the alleged employer "has the right to control the details of the work." Dkt. 23 at 2. ASUI also asserts that Chapman and Howard's 1099 tax forms designating them as "non-employees" raise a fact dispute regarding their employment status. *Id.* at 3. Finally, ASUI argues that Simien's testimony that Chapman and Howard were independent contractors creates a fact dispute regarding their employee status. *Id.*

ASUI cites Texas common law to support its contentions, but the Fifth Circuit has held that the remedial purpose of the FLSA requires a more "expansive definition" of employee than is used in the common law. *See Usery v. Pilgrim Equip. Co.,* 527 F.2d 1308, 1311 (5th Cir. 1976); *see also Hathcock v. Acme Truck Lines, Inc.*, 262 F.3d 522, 525–26 (5th Cir. 2001) (describing the different factors present in the employment tests under Texas and federal law). Further, ASUI's 1099 designations and Simien's testimony only show ASUI's subjective belief that Chapman and Howard are independent contractors, and subjective beliefs do not affect employee status. *See Brock*, 814 F.2d at 1049; *see also Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003) (holding that an employer's issuance of 1099 forms did not preclude summary judgment in favor of employee status under the FLSA). Because Chapman and Howard bear the burden of showing that there is no genuine dispute of material fact regarding employee status, the court now looks to the five factors that guide the worker-status determination.

a.   Degree of Control

When determining economic dependence, "control is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." *Usery*, 527 F.2d at 1312–13. Consequently, "lack of supervision over minor regular tasks cannot be bootstrapped into an appearance of real independence." *Hopkins*, 545 F.3d at 343. In *Hopkins*, the Fifth Circuit found that the degree of control factor weighed in favor of insurance-sales leaders being employees because the insurance company controlled "the meaningful aspects of the business model." 545 F.3d at 344. The meaningful aspects of the insurance business were "the hiring, firing, and promotion of the [s]ales [l]eaders' subordinate agents;" "advertising for new recruits;" "the type and price of insurance products [sold];" and sales leads. *Id.* at 343–44.

Like the insurance company in *Hopkins*, ASUI controlled the meaningful aspects of its community and home healthcare business. ASUI received clients from MHMRA, assisted those clients in choosing a residence, hired direct care specialists for the residences and staff for its Dayhabilitation Center, contracted with DADS for funding, and distributed those funds to direct care specialists and staff. Dkt. 20, Ex. E at 15–20, 25, 30. The undisputed testimony of Chapman and Howard indicates ASUI controlled their opportunities for hours; Simien assigned them to houses, told them they were scheduled to work every other day, and called them to cover the absences of other specialists. Dkt. 20, Ex. A at 2, Ex. B at 2. Because Chapman and Howard had little to no control over the meaningful aspects of the business, like the employees in *Hopkins*, this factor weighs in favor of employee status.

b.   Relative Investments

The next factor in the court's analysis is "the extent of the relative investments of the worker and the alleged employer." *Hopkins*, 545 F.3d at 343. In *Brock v. Superior Care, Inc.*, 840 F.2d

7

1054, 1058–60 (2d Cir. 1988), the Second Circuit affirmed the lower court's finding that this factor weighed in favor of employee status where the nurses' investment was "negligible" compared to a corporation that referred temporary personnel to healthcare institutions. The corporation had staff that made assignments, contracted with clients, and maintained a payroll. *Id.* at 1057. Likewise, ASUI's staff assigns caregivers to homes, contracts with DADS, manages clients, and maintains a payroll. Dkt. 20, Ex. E at 15–16, 18–20, 29–31, 43–44, 59–60. ASUI also operates a Dayhabilitation Center, which clients attend on weekdays. *Id.* at 15–16. Thus, Chapman and Howard's purchase of uniforms is, as in *Brock*, "negligible" compared to ASUI's investment. *See* Dkt. 20, Ex. A, Ex. B. The relative-investment factor weighs in favor of employee status.

    c.    <u>Opportunity for Profit</u>

The court next considers whether "the worker or the alleged employer controlled the 'major determinants of the amount of profit which the [worker] could make.'" *Hopkins*, 545 F.3d at 344 (quoting *Usery*, 527 F.2d at 1313). In *Carrell v. Sunland Construction, Inc.*, 998 F. 2d 330, 333 (5th Cir. 1993), a construction company's control over welders' hours and hourly rate of pay tended to weigh in favor of employee status. However, because the welders' year-end profits depended largely on their ability to consistently find other welding work and minimize welding costs, the court ultimately found the profit factor to support a finding of independent contractor status. *Id.* at 333–34.

Like the construction company in *Carrell*, ASUI controls Chapman and Howard's hours and their hourly rate of pay—facts which the Fifth Circuit found to support employee status. Unlike the welders, however, Chapman and Howard could not control their yearly profits by minimizing costs on the job or seeking regular employment elsewhere—their only costs were uniforms and they worked full-time for ASUI. Dkt. 20, Ex. A at 1–2, Ex. B at 1–2. Their opportunity for profit was

almost entirely determined by their hours and rate of pay provided by ASUI. Because the record evidence shows that ASUI controlled the major determinants of Chapman and Howard's profits, the court finds that this factor weighs in favor of employee status.

  d.  <u>Skill and Initiative</u>

  Next, the court looks to the "the skill and initiative required in performing the job." *Hopkins*, 545 F.3d at 343. Courts generally "look for some unique skill set...or some ability to exercise significant initiative within the business." *Id.* at 345. "Routine work which requires industry and efficiency is not indicative of independence and nonemployee status." *Usery*, 527 F.2d at 1314.

  The *Usery* court found that the operators of laundry pick-up stations were employees under the FLSA. *Id.* at 1310. The position required "courtesy to customers, tagging clothes, taking money from customers, paying [the employer] a set amount each day for cleaning, settling accounts...once a week, [and] occasionally hiring helpers." *Id.* at 1314. The skills required were valuable to the business, but were not unique to the job. *Id.* at 1315. The court found that the operators were unable to exercise initiative in their operations because the employer controlled the "major components open to initiative—advertising, pricing, and most importantly the cleaning plants with which to deal." *Id.* at 1314. The court held that the skill and initiative factor weighed in favor of employee status. *Id.*

  Like the pick-up station operators in *Usery*, Chapman and Howard do not require a specialized skill set or use of initiative in their positions. Direct care specialists do not need prior experience to be qualified for the job. Dkt.20, Ex. E at 44. Generally their job entails washing, cooking, cleaning, interacting with clients, and working on the clients' "training goals"; these skills, like those required by the *Usery* operators, are not unique to their profession. *See id.* at 41. Furthermore the direct care specialists are unable to exercise initiative—they cannot build new

9

business because the clients come to ASUI through the MHMRA, which provides clients the opportunity to select a care agency from a preexisting list. *See id.* at 25–27. Like the operators in *Usery*, Chapman and Howard's positions do not require specialized skills, and they were unable to exercise initiative in their role as direct care specialists. Therefore, the skill and initiative factor weighs in favor of employee status.

  e.  <u>Permanency of the Relationship</u>

Lastly, the court considers the permanency of the relationship between the worker and alleged employer. *Hopkins*, 545 F.3d at 1314. This factor weighs in favor of employee status when the work is done continuously and for a long period of time, but evidence that the worker provided similar services to others simultaneously weighs in favor of independent contractor status. *See Donovan v. Dial Am. Mktg., Inc.*, 757 F.2d 1376, 1384–85 (5th Cir. 1985) (finding employee status where researchers worked continuously for long periods of time and did not, for the most part, simultaneously do similar work for other companies). The undisputed facts show that Howard began her work with ASUI in the fall of 2005 and continued through December 16, 2010. Dkt. 20, Ex. A at 1, 3. Chapman worked with ASUI "off and on" from the fall of 2008 to December 2010. Dkt. 20, Ex. B at 3. There is no evidence to indicate that either Howard or Chapman worked in a similar capacity for another business while working for ASUI. Because the evidence shows Howard worked continuously for ASUI for close to four years, and Chapman worked for ASUI for almost two years, this final factor also weighs in favor of employee status.

Because the summary-judgment evidence shows that each of the five factors clearly weighs in favor of employee status, there is no genuine dispute of material fact regarding that status. The court holds that Chapman and Howard have proffered sufficient summary-judgment evidence to establish that they were employees of ASUI as a matter of law.

### 2. *Unpaid Wages and Overtime Compensation*

In addition to establishing employee status, Chapman and Howard must show that ASUI (1) failed to pay them for all hours worked and (2) failed to pay them one and one-half times their hourly rates for hours worked in excess of 40 hours a week. *See* 29 U.S.C. §§ 206(a), 207(a)(1). "An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy." 29 C.F.R. § 785.21. Chapman and Howard argue that they are owed unpaid wages and overtime because they worked "off the clock" from approximately 10 p.m. to 6 a.m. while the clients were asleep. Dkt. 20 at 11. ASUI offers no argument to the contrary. *See* Dkt. 23.

The summary judgment evidence shows that ASUI did not pay Chapman and Howard for all hours worked and failed to pay one and one-half times their hourly rates for overtime hours. Simien testified that direct care specialists were not paid while the clients slept from approximately 10 p.m. to 6 a.m. Dkt. 20, Ex. E at 61–63. Those hours, however, constitute work because Chapman and Howard were not assigned to 24-hour shifts. *See id.* at 42. It is also undisputed that Chapman and Howard worked more than forty hours per week, but were not paid one and one-half times their hourly rates. Dkt. 20 Ex. A at 2–3, Ex. B at 2–3. Therefore, the evidence shows that ASUI failed to pay Chapman and Howard for the overnight hours worked, a violation of 29 U.S.C. §§ 206(a) and 207(a)(1).

Because the summary judgment evidence shows, as a matter of law, that (1) Chapman and Howard were employees under the FLSA and (2) ASUI failed to pay them for minimum wage and overtime compensation for their overnight hours, Chapman and Howard have met their burden regarding liability under the FSLA. ASUI can only survive summary judgment on this issue by showing that there is genuine dispute of material fact regarding an affirmative defense.

B.  **Companionship Services Exemption**

In its motion to dismiss the complaint, ASUI asserts that Chapman and Howard are exempt from the FLSA's wage and hour provisions under the "companionship services" exemption. Dkt. 15. "Employee[s] employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves. . . . ." are exempt from the FLSA's minimum wage and overtime provisions. 29 U.S.C. § 213(a)(15). The burden of proving exempt status lies with the employer. *Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004). In its response to the motion for summary judgment, ASUI does not discuss the companionship services exemption or any other affirmative defenses. *See* Dkt. 23. Because ASUI failed to show there was a genuine issue of material fact regarding any affirmative defenses, the court holds that ASUI is liable for violations of 29 U.S.C. §§ 206(a) and 207(a)(1). Therefore, Chapman and Howard's motion for summary judgment regarding liability under the FLSA is GRANTED.

C.  **Damages**

Any employer who violates 29 U.S.C. §§ 206 and 207 is liable to the plaintiff-employees for the amount of unpaid wages and overtime plus an equal amount, designated as liquidated damages. 29 U.S.C. § 216(b). The employee has the burden of proving the amount of under-compensated wages and can often do so "through discovery and analysis of the employer's code-mandated records." *Myers v. Copper Cellar Corp.* 192 F.3d 546, 551 (6th Cir. 1999) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). However, when an employer has failed to keep adequate records:

> an employee has met her requisite burden of proof 'if [she] proves that [she] has in fact performed work for which [she] was improperly compensated and if [she] produces sufficient evidence to show the amount and extent of that work as a matter

of just and reasonable inference. The burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee even though the result may only be approximate.'"

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005).

Howard argues that she is entitled to $39,600.00 in unpaid wages and overtime compensation plus an equal amount as liquidated damages for a total of $79,200.00. Dkt. 20 at 17. Chapman argues that she is entitled to $22,275.00 in unpaid wages and overtime compensation plus an equal amount as liquidated damages, for a total of $45,550.00. Dkt. 20 at 17–18. The only evidence supporting these calculations is Chapman and Howard's testimony regarding their estimated hourly wage and approximate unpaid hours and two of Howard's paychecks showing different hourly wages. Dkt. 20, Ex. A at 2, Ex. A-2, Ex. B at 2. Chapman and Howard do not use employment records to calculate their damages, nor do they assert that ASUI kept inadequate records in order to justify an approximation of damages. *See* Dkt. 20 at 15–18. Therefore, the court finds that Chapman and Howard have failed to proffer sufficient evidence to support their damage calculations as a matter of law. Accordingly, Chapman and Howard's motion for summary judgment, with respect to damages, is DENIED.

**D.     Attorneys' Fees**

Finally, Chapman and Howard make an application for attorneys' fees. However, they note in their application that the amount of the award obtained is a predicate for determining attorneys' fees. Dkt. 20 at 22 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974)). Because this court has determined that there is a genuine dispute of material fact regarding the amount of damages, Chapman and Howard's application for attorneys' fees is DENIED WITHOUT PREJUDICE.

## IV. Conclusion

In conclusion, the court finds that Chapman and Howard have proffered sufficient summary-judgment evidence to establish a violation of 29 U.S.C. §§ 206(a) and 207(a)(1), but they have failed to present sufficient summary-judgment evidence to establish damages as a matter of law. Accordingly, Chapman and Howard's motion for summary judgment (Dkt. 20) is GRANTED IN PART and DENIED IN PART.  Further, Chapman and Howard's application for attorneys' fees is DENIED WITHOUT PREJUDICE.

It is so ORDERED.

Signed at Houston, Texas on August 21, 2012.

_____
Gray H. Miller
United States District Judge