**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| VERA CHAPMAN & KRYSTAL HOWARD, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-3025 |
| | § | |
| A.S.U.I. HEALTHCARE & DEVELOPMENT | § | |
| CENTER, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION, ORDER & FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On August 21, 2012, the court granted plaintiffs' motion for summary judgment in part. Dkt. 26. The court held that plaintiffs Vera Chapman ("Chapman") and Krystal Howard ("Howard") (collectively, "plaintiffs") had established as a matter of law that they were statutory employees of A.S.U.I. Healthcare and Development Center ("ASUI"), and ASUI failed to pay the plaintiff-employees minimum wage and overtime compensation as required by the Fair Labor Standards Act of 1938 ("FLSA"). Id. at 11. Plaintiffs thus met their burden regarding liability under the FLSA. Id. However, the court denied plaintiffs' motion for summary judgment as to damages and attorneys' fees, holding that plaintiffs had not proffered sufficient summary judgment evidence to support their damage and fee calculations as a matter of law. Id. at 13. As a result, the issues of damages and willfulness were left to the ultimate determination of the factfinder.

On November 5, 2012, these issues came for trial before the court. Dkt. 43. Trial concluded on November 6, 2012. Dkt. 44. After the close of plaintiffs' case-in-chief on November 6, defendants moved for judgment as a matter of law under Rule 52(c) of the Federal Rules of Civil

Procedure as to the individual liability of defendants Diann Simien ("Simien") and Kim McLemore ("McLemore").  See id.  After the court heard arguments from both sides as to whether Simien and McLemore were liable as employers under the FLSA, the court took these motions under advisement.

On November 20, 2012, the parties filed cross post-trial briefs.  See Dkts. 47–48.  Plaintiffs' concurrently filed an application for attorneys' fees with their post-trial brief.  Dkt. 47 at 19–24.  On December 12, 2012, defendants filed a supplemental brief, claiming that a recent dismissal of a collective action brought by a similarly-situated plaintiff "invokes the doctrine collateral estoppel and bars the Plaintiffs [in the case] before this Court from relitigating that issue of law."  Dkt. 51 at 2.  The parties then filed a series of responses and replies to the defendants' supplement.  Dkts. 52–55.

After considering the parties' briefing and arguments on the pending issues, the evidence of record, and applicable law, defendant McLemore's Rule 52(c) motion is GRANTED, defendant Simien's Rule 52(c) motion is DENIED, and plaintiffs' application for attorneys' fees is GRANTED.  Below the court will address defendants' trial and post-trial objections, including plaintiffs' responses thereto.  The court will then turn to the findings of fact, conclusions of law, and its order granting attorneys' fees.

A.     Defendants' Pending Trial Motions

At trial, McLemore and Simien, the individual defendants,  moved for judgment on partial findings that they are not statutory employers of the plaintiffs under the FLSA.  Section 203(d) of the FLSA  provides that an "employer" is "any person acting directly or indirectly in the interest of

an employer in relation to an employee." 29 U.S.C. § 203(d). In the Fifth Circuit, courts consider this relationship in light of the "economic realities" of the workplace. Watson v. Graves, 909 F.2d 1549, 1553 (5th Cir. 1990); Donovan v. Grim Hotel Co., 747 F.2d 966, 972 (5th Cir. 1984) ("This circuit . . . has underscored the importance of 'the economic realities' of employment . . . ." (citations omitted)). A corporate officer "'with operational control of a corporation's enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" Grim Hotel, 747 F.2d at 971–72 (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)). The definition of "employer" is broad enough to encompass an individual, who although lacking a possessory stake in the corporation, "effectively dominate[s] [the corporation's] administration or otherwise acts, or has the power to act, on behalf of the corporation vis-á-vis its employees." Reich v. Circle C Inv., Inc., 998 F.2d 324, 329 (5th Cir. 1993); see also Grim Hotel, 747 F.2d at 972 (examining the definition in the context of one who "independently exercised control over the work situation"). The Supreme Court has further held that "managerial responsibilities" and "substantial control of the terms and conditions of the [employer's] work" create statutory employer status. Falk v. Brennan, 414 U.S. 190, 195, 94 S. Ct. 427 (1973); Grim Hotel, 747 F.2d at 972.

With regard to McLemore, the trial testimony established that she was a co-founder and president of ASUI and that she worked in ASUI's corporate offices. However, there was no evidence demonstrating her operational control, if any, over the day-to-day management of the plaintiffs and other employees of the company. Accordingly, plaintiffs have not shown that McLemore is a statutory employer under the FLSA, and McLemore's Rule 52(c) motion is GRANTED.

3

Moreover, regarding Simien's motion for judgment on partial findings, the evidence at trial demonstrates significantly greater involvement on her part in the operations of ASUI than McLemore.  Simien had significant control over the plaintiffs' employment, making ultimate employment decisions, setting their schedules and pay rates, and reviewing their hours regularly. Because these facts demonstrate a genuine dispute of material fact regarding Simien's status as an employer, her Rule 52(c) motion is DENIED.

B.      Defendants' Post-Trial Objections

1.      Collateral Estoppel

On December 12, 2012, defendants filed a supplemental brief and argued that Judge Hughes's recent dismissal of another collective action against ASUI bars the court's consideration of the issues in this case.  See Dkt. 51; Lee v. ASUI Healthcare & Dev. Ctr., No. H-12-cv-82, slip op. at 1 (S.D. Tex. Oct. 19, 2012) (Hughes, J.) (final judgment).  However, there is no indication in Judge Hughes's orders that the issue of the plaintiff's FLSA status as an independent contractor or employee was decided in that litigation.  Thus, even if this court found that the other elements of issue preclusion applied here, the court cannot afford preclusive effect to a previous decision that did not necessarily include facts to be determined in this case.  See Terrell v. DeConna, 877 F.2d 1267, 1270 (5th Cir. 1989) (explaining that a party may not relitigate an issue when "the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action"). Defendants' collateral estoppel objection is OVERRULED.

2.      Plaintiffs' FLSA Status

Defendants object to plaintiffs' FLSA status and claim that the evidence at trial demonstrated that (a) plaintiffs should be classified as independent contractors and (b) the FLSA's companionship services exemption applies to preclude application of the overtime wage laws. Dkt. 48 at 1–10. The court has already adjudicated these issues at the summary judgment stage, and defendants have not presented a valid basis for the court to reconsider its liability determination. See Russ v. Int'l Paper Co., 943 F.2d 589, 593 (5th Cir. 1991) (holding that an "unexcused failure to present evidence which is available at the time summary judgment is under consideration constituted a valid basis for denying a motion to reconsider"). The defendants' objections on these points are OVERRULED.

3.      Plaintiffs' Evidence of Damages

Defendants object to plaintiffs' damages evidence on two grounds: (a) plaintiffs have not presented adequate information for assessment of damages; and (b) plaintiffs' evidence of damages in summary chart form is inadmissible. Dkt. 48 at 14–15, 17–19. Regarding the completeness of evidence regarding plaintiffs' hours worked, the defendants have the duty to keep accurate records of the hours worked by employees. Albanil v. Coast 2 Coast, Inc., 446 F. App'x 788, 806 (5th Cir. 2011). And when the defendant-employers fail to do so, employees need only produce sufficient evidence to show the amount and extent of uncompensated overtime hours worked as a matter of just and reasonable inference. Id. This burden can be satisfied with approximations of hours worked, and plaintiffs' recollections are correct unless rebutted by the defendants with contrary evidence. See Pforr v. Food Lion, Inc., 851 F.2d 106, 108 (4th Cir. 1988); Ting Yao Lin v. Hayashi Ya II, Inc., No. 08-Civ.-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (holding that the plaintiffs'

5

initial burden was satisfied by affidavits based on the plaintiffs' recollections describing the time spent performing various tasks that did not result in overtime compensation).

Here, the plaintiffs demonstrated at trial that the defendants' recordkeeping and time entries were substantially incomplete, as the defendants' records incorrectly treated plaintiffs as independent contractors and logged only part of the time that plaintiffs actually worked. Further, the defendants did not meaningfully rebut the plaintiffs' approximations at trial, and therefore the court may, pending a determination of admissibility under the evidence rules, accept the plaintiffs' estimates of hours worked in its damage determination.

With regard to defendants' objections to plaintiffs' damage summaries, see Pls.' Tr. Exs. 15–16, these exhibits were admitted during trial over defendants' objections, and defendants' post-trial brief does not present appropriate grounds for the court to reconsider its decision to admit the summaries into evidence.   These charts summarize hours worked, on a week by week basis, as reflected in the defendants' records and, where no records are available, as reflected in the plaintiffs' testimony.   Defendants' objections are OVERRULED.

4.      DADS Regulations

Defendants next argue that plaintiffs should not receive overtime compensation because the Texas Department of Aging and Disability Services ("DADS") prohibits the billing of time when the direct caregiver is not rendering services to the individual client. Dkt. 48 at 15–17. This argument, even if true, misses the mark regarding the court's overtime pay determination. DADS regulations provide the parameters of reimbursement to Home and Community-based Services (HCS) Program providers, and defendants have not shown that the DADS regulations supplant, or

6

even address, the providers' separate pay obligations to employees under the FLSA.  In other words, while an employee's particular activity, such as sleep time, may not be billable under Texas's billing regulations, it does not follow that the employer is excused from compensating the employee for that activity under federal wage law.  See 29 C.F.R. § 785.21 ("An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy.").  Defendants' objections to payment of overtime compensation because of DADS regulations is therefore OVERRULED.

5.      Defendants McLemore and Simien's Personal Liability

Defendants contend that McLemore and Simien are not statutory employers under the FLSA and thus should not be held personally liable in this case.  Dkt. 48 at 10–14.  The court has already found that McLemore is not a statutory employer.  With regard to Simien, the court finds that she exercised substantial control over the operational management of plaintiffs' employment.  She also set the rate of pay for plaintiffs and personally reviewed their hours and compensation. Simien is a statutory employer that should be held jointly and severally liable with ASUI for damages under the FLSA, and defendants' objection to Simien's personal liability is OVERRULED.

6.      Liquidated Damages

Defendants argue that the court should exercise its discretion to eliminate defendants' liability for liquidated damages.  Dkt. 48 at 21–22.  An employer who violates the FLSA is liable for the unpaid wages and "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b). The court may, however, exercise its discretion and decline to award liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was

in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260 (quoted in Bernard v. IBP, Inc. of Neb., 154 F.3d 259, 267 (5th Cir. 1998)).  The employer faces a "substantial burden" to demonstrate good faith and a reasonable belief that its actions did not violate the FLSA.  Mireles v. Frio Foods, Inc., 899 F.2d 1407, 1415 (5th Cir. 1990).  Further, the dual and specific findings of good faith and reasonable grounds have been interpreted strictly by the Fifth Circuit.  See Lee v. Coahoma County, Miss., 937 F.2d 220 (5th Cir. 1991) (citing LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1262–63 (5th Cir. 1986)).  Good faith, for example, imposes a duty to investigate potential liability under the FLSA.  Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464, 469 (5th Cir. 1979) ("Apathetic ignorance is never the basis of a reasonable belief.").

Here, defendants have not presented sufficient evidence that they made a concerted effort to comply with federal wage law, and the court cannot find that defendants' belief that the plaintiffs were independent contractors was reasonable and the product of a good-faith investigation. Accordingly, the court will not exercise its discretion to decline an award of liquidated damages to the plaintiffs.  Defendants' objection to an award of liquidated damages is OVERRULED.

7.     Willfulness of Defendants' FLSA Violations

Defendants contend that plaintiffs have not shown that the employers' violation of the FLSA was willful, and therefore the court should apply a two-year statute of limitations to plaintiffs' claims.  Dkt. 48 at 19–21; 29 U.S.C. § 255(a).  An employer's violation of the FLSA is "willful" under the FLSA if the employer "knew or showed reckless disregard for the matter of whether its

conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677 (1988); Reich v. Bay, Inc., 23 F.3d 110, 117 (5th Cir. 1994).

The court has already found that liquidated damages are appropriate in this case because the defendants did not act in good faith and with a reasonable belief in examining, if at all, whether their actions violated the overtime pay requirements of the FLSA. This finding, however, does not mandate the conclusion that defendants' conduct was also willful. While the evidence adduced at trial demonstrates that the defendants were negligent in evaluating their compliance with the FLSA, plaintiffs have not shown that defendants knew or recklessly disregarded the fact that their conduct was unlawful. Accordingly, although the court is troubled by the defendants' pay practices that violated federal law, the court does not find that the defendants' conduct was willful. The court applies the FLSA's general two-year statute of limitations in its award of damages, as detailed below in its findings of fact and conclusions of law.

C.      Findings of Fact[1]

1.  ASUI is a HCS program provider that contracts with DADS to provide care to mentally disabled individuals.

2.  ASUI owns and/or operates ten (10) to twenty (20) group homes which provide home based care for mentally disabled individuals and which are staffed, in part, by direct caregivers.

3.  ASUI is engaged in the operation of an institution primarily engaged in the care of the mentally ill.

---

[1]To the extent any Finding of Fact reflects a legal conclusion, it shall to that extent be deemed a Conclusion of Law, and to the extent any Conclusion of Law reflects a factual finding, it shall to that extent be deemed a Finding of Fact.

4.  Simien is the Vice-President, Program Manager, and Director of ASUI.

5.  Plaintiffs were employed by ASUI and Simien as direct caregivers to work overnight in the residential group homes caring for mentally disabled individuals.

6.  Howard was hired by Simien in 2005.

7.  Chapman was hired by Simien in the fall of 2008.

8.  Plaintiffs were scheduled to work one day on and one day off and paid by the hour.

9.  Plaintiffs began their shifts at 2:00 p.m. when they met their clients at the dayhabilitation ("dayhab") facility owned by ASUI and accompanied them to the group home.

10.  Plaintiffs worked in the group home from approximately 3:00 p.m. until 9:00 a.m. the following morning when they accompanied the clients back to the dayhab facility.  Plaintiffs were scheduled off from work until 2:00 p.m. the next day although they were asked by Simien to work extra shifts.

11.  Plaintiffs were instructed to sign in at the time that they arrived in the group home each day and to sign out at 10:00 p.m. each night.  Plaintiffs were allowed to sign in again from 6:00 a.m. until 9:00 a.m. when the clients left the home for the dayhab facility.  Although plaintiffs remained in the home overnight, their hours of work between 10:00 p.m. and 6:00 a.m. were off-the-clock hours.

12.  On average, plaintiffs worked off the clock for twenty-four (24) hours during one week of the pay period and thirty-two (32) hours off the clock during the second week of the pay period.

13.   Plaintiffs were paid the same hourly rate of pay for their hours worked between 3:00 p.m. and 10:00 p.m. and 6:00 a.m. to 9:00 a.m. regardless of the number of hours they worked in a workweek.

14.   Howard worked for ASUI and Simien during the relevant period of August 18, 2009 through December 16, 2010.

15.   From August 2009 through June 2010, Howard's regular pay rate was $7.25 per hour.

16.   From July 2010 through September 2010, Howard's regular pay rate was $8.00 per hour.

17.   From October 2010 through December 2010, Howard's regular pay rate was $9.00 per hour.

18.   Chapman worked for ASUI and Simien for approximately thirteen (13) months between August 18, 2009 and December 2010.

19.   Chapman's regular pay rate during her employment was $7.25 per hour.

20.   ASUI's payroll records for Chapman and Howard are inconsistent with the patient service logs during the relevant two-year period at issue in this lawsuit.

21.   ASUI's employee records are inadequate to determine the actual number of hours worked by plaintiffs between August 2009 and December 2010.

22.   ASUI's employee  records do not accurately reflect the actual number of hours worked by plaintiffs between August 2009 and December 2010.

23.   Plaintiffs were required to meet their clients at ASUI's dayhab facility at 2:00 p.m. each shift but they were not allowed to clock in until they reached the group home.

24. Simien has an ownership interest in ASUI and has, at all material times, been involved in the day-to-day operations of ASUI.

25. McLemore is a co-founder and president of ASUI but was not involved in the day-to-day operations of ASUI.

26. ASUI and Simien violated the FLSA by failing to pay plaintiffs for all of their hours worked and for failing to pay plaintiffs overtime compensation for their hours in excess of forty (40) hours in a workweek.

27. Between August 18, 2009 and December 6, 2010, Krystal Howard earned but was not paid **$27,182.56** in wages and overtime compensation.

28. Between August 18, 2009 and December 10, 2010, Vera Chapman earned but was not paid **$15,311.82** in wages and overtime compensation.[2]

**D.     Conclusions of Law**

1. The FLSA provides that every employer shall pay a minimum wage to their employees. 29 U.S.C. § 206(a).

2. No employer shall employ an employee for more than forty (40) hours in a workweek unless such employee receives one and one-half times their regular rate of pay for each overtime hour worked. *Id.* § 207(a)(1).

3. Sleep time is considered as time worked when the employee's shift is less than twenty-four (24) hours. 29 C.F.R. § 785.21 ("An employee who is required to be on duty for less than 24

---

[2] The court arrived at these figures after considering plaintiffs' exhibits 15 & 16 and accepting the damage estimates. The court reduced defendants ASUI and Simien's liability by the sum of plaintiffs' unpaid wages and overtime before August 18, 2009, which is the accrual date for defendants' liability under the FLSA's 2-year statute of limitations.

hours is working even though he is permitted to sleep or engage in other personal activities when not busy."); *Nelson v. Ala. Inst. for Deaf & Blind*, 896 F. Supp. 1108, 1112 (N.D. Ala. 1995). An employee who is required to be on duty for less than 24 hours is working even though he or she is permitted to sleep. 29 C.F.R. § 785.21.

4. Any employer who violates Sections 206 and 207 shall be liable to the aggrieved employee in the amount of their unpaid compensation and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

5. Section 216 of the FLSA provides that liquidated damages shall be awarded to prevailing employees.

6. Liquidated damages are compensatory, not punitive in nature. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("[T]he liquidated damages provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages."). Accordingly, the granting of liquidated damages is mandatory under Section 216 of the FLSA except when the employer shows to the satisfaction of the court that its act or omission was in good faith and based upon reasonable grounds for believing that it was not violating the Act. *Lowe v. Southmark Corp.*, 998 F.2d 335, 337–38 (5th Cir. 1993).

7. The exception to liquidated damages imposes upon the employer a plain and substantial burden to persuade the court by proof that its failure to obey the statute was in good faith and predicated upon such reasonable grounds that it would be unfair to award liquidated damages. *Barcellona*, 597 F.2d at 468.

8.  Good faith imposes some duty to investigate potential liability under the FLSA.  *Id.* at

469.  It requires that an employer take active steps to ascertain the dictates of the FLSA and then

move to comply with them.  *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 71

(2d Cir. 1997).

9.  Because Simien and ASUI did not submit sufficient evidence that they made a concerted

effort to comply with federal wage law, the court does not find that defendants' belief that the

plaintiffs were independent contractors was reasonable and the product of a good-faith investigation.

10.  ASUI is an enterprise as defined in 29 U.S.C. § 203(s)(1)(B) of the FLSA.

11.  An employment relationship existed between plaintiffs and ASUI.

12.  Simien is personally liable as an employer for violations of the FLSA.

13.  McLemore is not personally liable as an employer for violations of the FLSA.

**E.      Plaintiffs' Application for Attorneys' Fees**

Plaintiffs request attorneys' fees related to the prosecution of this case.  Dkt. 47 at 19–24.

Plaintiffs seek $75,901.25 in legal fees and $1,823.24 in costs for a total of $77,724.49 under the

lodestar analysis.  *Id.* at 24.  Defendants did not respond to plaintiffs' application for attorneys' fees.

The FLSA provides that "[t]he court in such action shall, in addition to any judgment

awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant,

and costs of the action."  29 U.S.C. § 216(b).  Fee awards are mandatory for prevailing plaintiffs in

FLSA cases.  *Kreager v. Solomon & Flanagan P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985).  When

evaluating the proper amount of attorneys' fees to be awarded, the court uses the lodestar method

and multiplies the number of hours reasonably spent on the case by an appropriate hourly rate in the

community for such work. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

Then, after calculating the lodestar, the court considers whether to adjust the fee upward or

downward based on the relative weights of the twelve factors set forth in *Johnson v. Georgia*

*Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  The lodestar may not be adjusted due to a

*Johnson* factor, however, if the creation of the lodestar amount already took that factor into account.

*Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998).  "[A]n attorney's failure to obtain every

dollar sought on behalf of his client does not automatically mean that the modified lodestar amount

should be reduced." *Singer v. City of Waco*, 324 F.3d 813, 830 (5th Cir. 2003).  Given the nature

of claims under the FLSA, it is not unusual for attorneys' fees to exceed the amount of the judgment

in the case. *Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1286 (S.D. Fla. 2008).

The prevailing market rate for similar services by similarly situated trained and experienced

lawyers in the relevant legal community is the established basis for determining a reasonable hourly

rate. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  Here, plaintiffs' counsel Mark

Siurek testified in his declaration regarding the reasonability of his firm's fee request. *See* Dkt. 47,

Ex. A.  The court has reviewed Siurek's testimony regarding his experience, the experience of

associate counsel Patricia Haylon, and the experience of senior paralegal Susan Diedrich.  The court

finds that the hourly rates provided are reasonable for attorneys and paralegals in Houston's labor

and employment bar, namely $340.00 per hour for Siurek's services, $325.00 per hour for Haylon's

services, and $175.00 per hour for Diedrich's services. *See, e.g.*, *Hilton v. Exec. Self Storage*

*Assocs., Inc.*, No. H-06-2744, 2009 WL 1750121, at *9 (S.D. Tex. June 18, 2009).

The second step in the lodestar analysis is to determine the number of hours reasonably expended by counsel in the litigation.  Plaintiffs bear the burden to show the reasonableness of the hours billed and are responsible for proving that they exercised billing judgment.  *Saizan*, 448 F.3d at 799.  Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant.  *Id.*; *see also Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002).

The majority of fees submitted for reimbursement are for Haylon's time in pretrial and post-trial matters and Siurek's time during trial.  Plaintiffs have not sought reimbursement for paralegal time, nor have they requested reimbursement for Siurek's time expended as a supervising attorney.  Further, plaintiffs have not sought fees for Haylon's time during the settlement conference or trial of this case.  These limitations demonstrate consideration of the proper scope of reimbursement and the exercise of billing judgment by plaintiffs' counsel.  Accordingly, the court finds that the plaintiffs' request of fees in the amount of $ 75,901.25 is reasonable under the lodestar analysis.  However, because the plaintiffs' ultimate award of damages is approximately 63% of the requested damages due to the lack of a willfulness finding, the court finds under a *Johnson* review that a 10% reduction of attorneys' fees is warranted in this case.  *See Saizan*, 448 F.3d at 800 (stating that the most critical single factor is the degree of success obtained).  A 10% reduction in attorneys' fees yields a total fee award of $68,311.13.

Lastly, with regard to costs, the court may tax costs in favor of the prevailing party.  "Reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual

16

equipment are types of litigation expenses that are recoverable under the FLSA as part of an attorneys' fee award." *Quintanilla v. A&R Demolition Inc.*, No. H-04-1965, 2007 WL 5166849, at *9 (S.D. Tex. May 7, 2007).  Court-reporter fees, copying fees, and docket fees are also recoverable under the general cost-shifting statute, 28 U.S.C. § 1920.

The costs enumerated in plaintiffs' application for fees, Dkt. 47, Ex. A at 11, are the types of costs recoverable under the FLSA and fee-shifting statutes, and the court grants plaintiffs' application for the taxation of costs in the amount of $1,823.24.  The plaintiffs' total recovery of fees and costs as the prevailing parties in this FLSA case equals the sum of $68,311.13 and $1,823.24, or $70,134.37.

### F.    Conclusion

After considering the parties' briefing and arguments on the pending issues, the evidence of record, and applicable law, McLemore's Rule 52(c) motion (Dkt. 44) is GRANTED, Simien's Rule 52(c) motion (Dkt. 44) is DENIED, and plaintiffs' application for attorneys' fees (Dkt. 47) is GRANTED.   Other than defendants' objection to a willfulness finding, defendants' post-trial objections (Dkt. 48) are OVERRULED.

The court will enter a separate final judgment in favor of plaintiffs.  Defendants ASUI and Simien are jointly and severally liable for **$155,123.13** in damages, calculated as follows: (1) $54,365.12 to plaintiff Krystal Howard ($27,182.56 for unpaid wages and overtime compensation, and an additional equal amount as liquidated damages); (2) $30,623.64 to plaintiff Vera Chapman ($15,311.82 for unpaid wages and overtime compensation, and an additional equal

amount as liquidated damages); and (3) $70,134.37 to the law firm of Warren & Siurek, LLP (as

reimbursement for reasonable attorneys' fees of $68,311.13 and costs of $1,823.24 under a *Johnson*

and lodestar analysis).

It is so ORDERED.

Signed at Houston, Texas on February 6, 2013.

Gray H. Miller
United States District Judge